THE CITY AND COUNTY OF HONOLULU *v.* JOSE
CAETANO, C. C. VON HAMM, JAMES L. COCK-
BURN AND JOHN L. FLEMING, TEMPORARY
ADMINISTRATORS OF THE ESTATE OF H.
WILHELM WOLTERS, DECEASED, AND ALSO
EXECUTORS AND TRUSTEES OF THE ESTATE
AND UNDER THE WILL OF SAID H. WILHELM
WOLTERS, DECEASED, ET AL.

No. 1736.

SUBMITTED JUNE 7, 1927.          DECIDED JULY 18, 1927.

PERRY, C. J., PARSONS, J., AND CIRCUIT JUDGE ROSS IN
PLACE OF BANKS, J., DISQUALIFIED.

OPINION OF THE COURT BY PERRY, C. J.

This was a suit for the condemnation of land required for the extension of a public highway. The essential allegations of the petition were that the plaintiff, a municipal corporation invested with the power to acquire land by condemnation for public purposes, desired to acquire certain parcels of land therein described for public purposes, to-wit, for the extension of a street known as Bishop Street, that the respondents claimed to be the owners of the lands or of interests therein and that the board of supervisors had approved of the acquisition and condemnation of the land. The prayer was that the court "determine all claims adverse and conflicting to the said pieces and parcels of land and the compensation and/or damages to be awarded to the several defendants, respectively, for the taking of the same". Certain of the respondents filed an answer setting forth that they claimed certain interests in certain of the parcels described in the petition and that the reasonable value of their interests in the land and the damage to their interest in adjoining lands of which the said parcels were a part was the sum of $180,000. They prayed that "their damages for the taking of said parcels of land be assessed and awarded in the sum of one hundred eighty thousand dollars ($180,000)". Two others of the respondents filed a separate answer claiming an interest in certain of the parcels

of the land and, without attempting any estimate of the value of the land or of the extent of the damage to them, prayed that the court "determine the compensation and damages to be awarded to them for the taking of their land by the plaintiff".

The petition was filed on October 1, 1924. One of the answers was filed on October 21, 1924, and the other two days later. The trial was had on December 15, 1925, without a jury. The decision of the trial judge was rendered on January 12, 1926. In that decision findings were made of the value of the land condemned and of the damage to the remainder of the adjoining property and nothing was said about interest. On January 12, 1926, judgment was entered in accordance with the decision of the trial judge, fixing the value of the land condemned at the same amounts stated in the decision, and again containing no provision with reference to interest. That decision and that judgment were not brought to this court for review by exceptions, writ of error, or any other form of appeal.

On August 10, 1926, more than six months after the filing of the judgment, and after the expiration of the time within which a writ of error could have been sued out or other method of appeal prosecuted, the plaintiff filed a petition alleging that it had performed the judgment by tendering to the respondents the sums respectively awarded in their favor, and asking for a final order of condemnation as provided for by section 824, R. L. 1925. To this petition the same sets of claimants who had appeared originally filed each an "Answer and Motion to Amend Judgment" alleging that the "just compensation required by the Constitution of the United States and by the laws of Hawaii applicable hereto for the taking of property on condemnation proceedings and in this proceeding is the value of the property at the date of the summons * * * plus interest thereon at the rate of 8%

4

until date of judgment and thereafter at 7% until paid",
and that between the date of the institution of the suit
and the date of the judgment the total of the taxes,
water rates and insurance paid upon the property had
exceeded by certain amounts stated the total income
received. In each instance they alleged "that due to
the institution of the condemnation proceedings herein,
defendants have been unable to lease or otherwise dispose
of said properties, except a temporary lease on part of
Parcel 4": Each prayed that plaintiff's petition be denied,
that "no final order of condemnation be issued herein
until payment by plaintiff to defendants" of the amounts
named in the decision and judgment as the value of the
property, "plus interest thereon at the rate of 8% per
annum until the date of judgment and thereafter at the
rate of 7% until paid". They also moved "that the judg-
ment herein, dated January 12, 1926, be amended to make
clear the fact that defendants are entitled to the value
of the property condemned as of the date of the summons
herein, plus interest thereon at the rate of 8% per annum
to the date of judgment and thereafter at 7% until paid".

On August 20, 1926, in pursuance of a stipulation of
all parties concerned, the court made an order that cer-
tain moneys which had been theretofore tendered and paid
into court by the county be paid to the parties entitled
thereto without prejudice to such right as the claimants
might otherwise have to present additional claims for
interest upon the amounts awarded; and the moneys so
paid into court were paid out in accordance with the stip-
ulation.

The trial judge, on November 20, 1926, disallowed in-
terest for the period between the date of the commence-
ment of the suit and the date of judgment, allowed interest
at the rate of 6% per annum, under the general statute on
interest, for the first thirty days after judgment, and in-
terest thereafter at the rate of 7% per annum. An order

in accordance with that opinion was filed on November 30, 1926. From this last mentioned order the case comes to this court by bill of exceptions presenting the question whether interest is recoverable and, if so, to what extent on the amounts awarded by the original judgment. The interest asked by the claimants is by way of damages for the injury done to the owners' rights during the period named, the claim being that the pendency of this suit for condemnation interfered with the right to lease and to obtain income from the property.

The statute under which this proceeding for condemnation was instituted (R. L. 1925, chap. 61) provides (section 813), after granting the power to condemn, that "the circuit courts shall have power to try and determine all actions arising under this chapter, subject only to an appeal to the supreme court in accordance with law" and that (section 814) "where not otherwise expressly provided in this chapter, the procedure shall be the same as in other civil actions". This latter provision, standing by itself, would certainly authorize, in a suit for condemnation, the presentation by claimants of a claim for interest prior to judgment and the judicial adjudication of such a claim. Continuing, the chapter authorizes the city and county to institute proceedings in its own name for the condemnation of property, that actions under the chapter shall be commenced by filing a petition and issuing a summons, that all persons who are owners or claimants of the property sought to be condemned must be joined as defendants, that summons shall be served on all known claimants, and that (section 819) "any person in occupation of or having any claim or interest in any property sought to be condemned or in the damages for the taking thereof, though not named in the complaint, may appear, plead and defend in respect to his own property or interest in like manner as if named in the complaint", and that (section 820) "the court shall have power to deter-

6

mine all adverse or conflicting claims to the property sought to be condemned and to the compensation or damages to be awarded for the taking of the same". In section 821 it is provided that "in fixing the compensation or damages to be paid for the condemnation of any property, the value of the property sought to be condemned and all improvements thereon, shall be separately assessed; and if the property sought to be condemned constitutes only a portion of a larger tract, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff shall also be assessed". Section 822 reads: "For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of summons, and its actual value at that date shall be the measure of valuation of all property to be condemned, and the basis of damage to property by reason of its severance from the portion not sought to be condemned, subject, however, to the provisions of section 821. No improvement put on the property subsequent to the date of the service of the summons shall be included in the assessment of compensation or damages". In section 823 provision is made that "the plaintiff must within two years after final judgment pay the amount assessed as compensation or damages". Under section 824, "when all payments required by the final judgment have been made, the court shall make a final order of condemnation * * * and thereupon the property described shall vest in the plaintiff". In section 825, relating to possession pending appeal, it is provided that "if an order be made letting the plaintiff into possession, as provided for in this section, compensation and damages awarded shall draw lawful interest from the date of such order".

Nowhere in the chapter under consideration or in any

other relevant statute is it expressly provided that claims for interest to which the claimant is otherwise entitled, by way of damages, for the period between the institution of the suit and the entry of judgment shall not be presented or litigated. There is no provision expressly excluding any proper element of damages suffered by the claimants in consequence of the taking of the land. Section 822 does provide that the actual value of the property at the date of the summons shall be "the measure of valuation" of the property condemned, but this is not the equivalent of a provision that the actual value of the land at the date of the summons is the only possible element of damages. It is not a provision that the value of the property at the date of the summons shall be under all circumstances just compensation for the taking or that other elements of damage may not be considered. If, under the facts of a given case and under the law applicable thereto, a claimant, in order to be given that full measure of compensation for the taking which the Constitution guarantees to him, is entitled to interest for the period in question prior to judgment as a convenient and practicable method of measuring his damages for "the blight of the summons", as it has been called, or for any other cause, that element of damage is not excluded by anything contained in section 822 or by any other statutory provision which has come to our attention.

It was a justiciable issue at the trial, whether the injury done to the respondents' rights of ownership during the period prior to judgment was due to the blight of the summons or to the pendency of litigation concerning the title of the claimants or to some other cause. That issue could and should have been litigated at the trial, subject to review by this court on a proper appeal.

Whether, under a correct view of the law, claimants situated as were those in the case at bar are entitled to interest by way of damages for the period under consider-

ation, with or without deductions for the net income or value of use for the same period, is a question which does not arise on these exceptions. That element of damage, if the claimants were entitled to it, could have been presented and therefore should have been presented and adjudicated at the trial and included in the judgment. Whether the claim for interest was presented at the trial the record does not make clear. Certainly no exception or other method of appeal is before us which directly attacks the decision or the judgment in which the extent of the damage was adjudged. In other words, the original decision and judgment remain unappealed from and in full force and effect. The judgment of January 12, 1926, was a final judgment, although it was not the last possible judgment in the case. It finally disposed of all the issues that were tried and that could have been tried between the parties in the suit, relating to damages. It finally disposed of the amount of damages recoverable by the respondents. It was final and appealable. "Its nature or effect, rather than the stage at which it is rendered, is the true test" of its appealability. *Dole* v. *Gear*, 14 Haw. 554, 566.

It is not now claimed that the judgment as entered does not conform in every respect to the decision upon which it was based or does not correctly express in formal language the conclusions of the court on the subject of damages. A judgment which fails to correctly express and carry out the decision upon which it was based may be amended so as to make it conform thereto, but judicial errors in the decision may not be corrected by amendments to the judgment. "In respect to the extent and character of the relief granted, as in other matters, if the entry of judgment does not correspond with the judgment actually intended and pronounced by the court, it may be amended by correcting any clerical mistake, or supplying matters inadvertently omitted, or striking out clauses erroneously

inserted, or by making such changes as are necessary to make it conform to the pleadings, or to the verdict or findings; * * * but there is no power to amend by correcting a judicial mistake or error of law, or by giving relief other than, in addition to, or in lieu of, that originally contemplated and intended to be given, or by releasing from the operation of the judgment persons or property originally affected by it, or so as to vary the rights of the parties as fixed by the original decision, or by adjudicating a matter which may have been, but was not, considered and determined on the trial". 34 C. J. 240. An amendment of the judgment is proper to correct an error of the clerk in entering the amount of the recovery as fixed by the court in its decision, "but where the amount of a judgment is wrong, because of a judicial error in fixing the amount," an amendment cannot be made. "It is error to amend a judgment by changing its amount where the sole reason for the alteration is that the court has changed its mind". *Ib.* 241, 242. "A clerical error in the calculation of interest or in fixing the date from which interest shall run may be corrected by an amendment. But judicial error in allowing or denying a recovery of interest or in fixing the amount of interest to be recovered, cannot be corrected by amendment." *Ib.* 242.

"In the exercise of the power to make amendments a court is not authorized to do more than to make its records correspond to the actual facts, and cannot, under the form of an amendment of its records, correct a judicial error, or make of record an order or judgment that was never in fact given. * * * An amendment of a judgment can be allowed only for the purpose of making the record speak the truth, and not for the purpose of revising or changing the judgment, or for the purpose of correcting an error of law therein contained." 15 R. C. L. p. 673.

"Clerical misprisions can be corrected at any time by

an order of the court, but judicial errors can be remedied only through a motion for a new trial or appeal". *Egan* v. *Egan,* 90 Cal. 15, 21. To the same effect is *Gagnon* v. *United States,* 193 U. S. 451, 456, 457.

The judgment which it is sought to amend speaks the truth. It serves the ordinary purpose of a judgment in recording in concise, formal language the conclusions and order of the court. The attempt to amend operates in reality as an attempt to alter the amount of the recovery by adding thereto an element of damage not included in the original award of the court either by omission of the parties to present the claim or by judicial error. To that extent, therefore, the amendment cannot be allowed.

The trial judge, evidently influenced by the thought that the constitutional requirement of just compensation would not be satisfied if interest were disallowed for the first thirty days after the entry of judgment, held that the general statute (R. L. 1925, section 3586), allowing interest at 6% per annum on judgments, applied to the judgment in this case; and also held that under the statute on condemnation 7% interest should be allowed on the judgment from the end of the thirty-day period, (R. L. 1925, section 823). The city and county, petitioner herein, has paid into court, in addition to the principal sums awarded by the judgment, interest thereon at the rate of 6% per annum for the thirty-day period and at the rate of 7% per annum thereafter; and the moneys so paid into court have been distributed to the claimants in their proper shares. None of the appellants are claiming interest subsequent to the judgment at the rate of more than 7% per annum. It has now become a moot question, therefore, whether the statute is unconstitutional if it disallows all interest for the period of thirty days ensuing next after judgment, for the claimants have been awarded and have been actually paid interest at the rate of 6% for that period. The only possible issue re-

maining is whether there has been any failure to satisfy the constitutional requirements of just compensation in allowing for the thirty-day period interest at the rate of only 6% instead of at the rate of 7%. As to this feature, however, no doubt can be entertained. It is not within the province of this court to say that interest at the rate of 7% would satisfy the constitutional requirement and that interest at the rate of 6% would not satisfy it. As between 6% and 7% the question is entirely a legislative one. It may be that the general statute relating to interest on judgments is not applicable to such a judgment as that under consideration and that the statute relating to condemnation proceedings excludes interest for the thirty-day period and does so without violating the Constitution, but upon these points no opinion need be expressed for under that view of the law the claimants are not aggrieved by the decision now under review.

The exceptions are overruled.

*C. S. Davis,* City and County Attorney, for the City and County.

*Robertson & Castle* and *Henry Holmes* for the temporary administrators and trustees.

*Thompson, Cathcart & Beebe* and *Prosser, Anderson & Marx* for Herman and Carl Wolters.

*Smith & Wild* for Free and Hansa Town of Bremen and Bremen Handels Museum.

*Smith, Warren, Stanley & Vitousek* for C. A. Mackintosh and J. M. Monsarrat.