**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000488
20-JUN-2024
08:23 AM
Dkt. 175 MO**

NO. CAAP-18-0000488


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


MATHIAS & NIEHAUS, LLC, a Hawaiʻi limited liability company,
MATHIAS & NIEHAUS KALIAE, LLC,
a Hawaiʻi limited liability company,
Plaintiffs/Counterclaim Defendants/
Appellees/Cross-Appellants v.
KALIAE LLC, a Hawaiʻi limited liability company,
Defendant/Counterclaimant/Appellant/Cross-Appellee.

KALIAE LLC, a Hawaiʻi limited liability company,
Third-Party Plaintiff-Appellant/Cross-Appellee v.
MATHIAS & NIEHAUS KALIAE, LLC,
a Hawaiʻi limited liability company,
Third-Party Defendant-Appellee/Cross-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CC151000463)


MEMORANDUM OPINION
(By:  Leonard, Acting Chief Judge, Wadsworth and McCullen, JJ.)

Defendant/Counterclaimant/Third-Party Plaintiff-

Appellant/Cross-Appellee Kaliae LLC (**Kaliae LLC**) appeals from

the Circuit Court of the Second Circuit's[1] June 1, 2018 Final Judgment (**Final Judgment**) and various orders.[2] Plaintiff/ Counterclaim Defendant/Third-Party Defendant-Appellee/Cross-Appellant Mathias and Niehaus Kaliae, LLC (**MNK LLC**) cross-appeals from the circuit court's August 13, 2018 Order Denying MNK LLC's Motion "to Modify and Correct the Final Judgment by Adding Awarded Interest of $109,687.58" (**Order Denying Modification**).

For the reasons discussed below, we affirm the Order Denying Modification and we vacate the Final Judgment to the extent it ordered attorneys' fees. We remand this case for further proceedings consistent with this decision.

---

[1] The Honorable Peter T. Cahill presided.

[2] Kaliae LLC appeals from the following orders:

- June 19, 2017 "Court's Findings of Fact, Conclusions of Law and Order" (**FOF, COL, and Order**);

- November 29, 2016 Order Denying Kaliae LLC's Motion for Summary Judgment;

- April 3, 2017 Order Denying Kaliae LLC's Motion to Strike MNK LLC's Motion for Summary Judgment;

- May 15, 2017 Order Denying Kaliae LLC's Motion for Judgment on the Pleadings or Summary Judgment;

- October 3, 2017 Order Granting in Part and Denying in Part MNK LLC's July 2017 Motion and Amended Motion for Summary Judgment on Kaliae LLC's Counterclaim, Affirmative Defenses, and Motion to Dismiss MNK LLC's Reformation Claim; and

- June 1, 2018 Order Granting Kaliae LLC's Motion for Clarification on Judgment and to Set Hearing.

2

## I.   BACKGROUND

The background in this case spans almost twenty years. In 2005, Neil R. Strumingher (**Strumingher**), and married couple Deborah L. Mathias (**Deborah**) and David Paul Niehaus (**David**), purchased a 63-acre parcel of land located on Hana Highway (**Property**) as tenants in common.  Deborah and David purchased an undivided 50% interest in the Property as tenants by the entirety, while Strumingher purchased the remaining undivided 50% interest as a tenant in severalty.

Effective July 1, 2008, Kaliae LLC and Mathias & Niehaus, LLC (**M&N LLC**) entered into a "Tenants in Common Agreement" (**Agreement**) covering the Property.  According to the Agreement, Strumingher controlled Kaliae LLC, and Deborah and David controlled M&N LLC.

Notwithstanding the representations in the Agreement, Deborah and David deeded their 50% undivided interest in the Property to MNK LLC (as opposed to M&N LLC) weeks later at the end of July 2008.  And Strumingher deeded his 50% undivided interest in the Property to Kaliae LLC in September 2008.

On March 6, 2014, Kaliae LLC sent M&N LLC a Buy-Sell Notice invoking section 4.2 of the Agreement, which provided for the initiating party to set the value of the Property and the other party to elect to buy the initiator's interest or sell its own interest in the Property:

At any time during the term of this Agreement, either Co-Owner (the "Initiating Co-Owner") may give written notice (the "Buy-Sell Notice") to the other Co-Owner (the "Responding Co-Owner") of its desire to sell its entire ownership interest in the Property to the Responding Co-Owner. The Buy-Sell Notice shall set forth the fair market value of the Property as determined by the Initiating Co-Owner, in its sole and absolute discretion (the "Buy-Sell Value"). Upon receipt of the Buy-Sell Notice, the Responding Co-Owner shall have until the date that is one hundred and eighty (180) days following receipt of the Buy-Sell Notice (the "Determination Date") to send a written notice (which written notice may be in the form of an e-mail with confirmation) to the Initiating Co-Owner (the "Response Notice") electing to either:

(a) purchase the Initiating Co-Owner's interest in the Property for an amount equal to the amount that the Initiating Co-Owner would receive (the "Initiating Co-Owner's Distribution Amount") if the Property were sold for the Buy-Sell Value on the Determination Date . . . ; or

(b) sell to the Initiating Co-Owner all of the Responding Co-Owner's interest in the Property for the amount (the "Responding Co-Owner's Distribution Amount") which the Responding Co-Owner would receive if the Property were sold for the Buy-Sell Value on the Determination Date . . . .

If the Responding Co-Owner fails to timely send an effective Response Notice, then the Responding Co-Owner shall be deemed to have elected to sell its interest in the Property in accordance with subsection (b) above. If the Responding Co-Owner elects to purchase the interest of the Initiating Co-Owner, then the Responding Co-Owner shall, within such previous one hundred and eighty (180) day period, deliver to the Initiating Co-Owner cash in an amount equal to five percent (5.00%) of the Initiating Co-Owner's Distribution Amount, which amount shall be placed in escrow until closing. Conversely, if the Responding Co-Owner elects (or is deemed to have elected) to sell its interest to the Initiating Co-Owner, then within five (5) business days of receipt of notice of the Responding Co-Owner's election to sell its interest in the Property, the Initiating Co-Owner shall deliver a deposit to the Responding Co-Owner in an amount equal to five percent (5.00%) of the Responding Co-Owner's Distribution Amount, which amount shall be placed in escrow until closing. . . .

(Emphases omitted and added.)

As the co-owner invoking Section 4.2, Kaliae LLC set the fair market value of the Property at $2.6 million. M&N LLC

4

did not respond and, thus, was deemed to have elected to sell its interest to Kaliae LLC. However, Kaliae LLC did not deposit five percent of the value of its 50% interest ($1.3 million) into an escrow account as the Agreement required.

Instead, on September 11, 2014, Kaliae LLC sent M&N LLC a letter (**September 11, 2014 Letter**) clarifying the terms of the Agreement and proposing both parties waive their rights under the Agreement. The September 11, 2014 Letter also indicated Kaliae LLC would purchase MNK LLC's (as opposed to M&N LLC's) interest in the Property if MNK LLC did not agree with the September 11, 2014 Letter's terms:

> If you do not execute and deliver to me the acknowledgment and agreement set forth below by September 15, 2014, I will commence the process of buying you out under the terms of the Buy/Sell Notice.
>
> . . . .
>
> ACKNOWLEDGMENT AND AGREEMENT
>
> Kaliae LLC ("Kaliae") and Mathias & Niehaus Kaliae, LLC ("MNK") own in fee simple, with a 50% interest each, as tenants in common, a 63 acre property located at 15470 Hana Highway . . . (the "Property").
>
> Kaliae and MNK own the Property subject to a "Tenants in Common Agreement," dated July 1, 2008 ("TIC Agreement").
>
> As permitted by the TIC Agreement, Kaliae provided MNK with a Buy/Sell Notice, dated March 6, 2014, wherein Kaliae offered to buy or to sell the Property to MNK for the price set forth in the Buy/Sell Notice. As required by the TIC Agreement, the Buy/Sell Notice gave MNK 180 days to respond, and identify whether MNK would buy or sell.
>
> MNK did not respond to Kaliae's Buy/Sell Notice within 180 days.
>
> Under the TIC Agreement a failure to reply to a Buy/Sell Notice within 180 days is deemed an "election to sell."

5

> MNK through its members, David Niehaus and [Deborah]
> Mathias, have verbally communicated to Neil Strumingher,
> sole member of Kaliae, that MNK did not desire to be bought
> out under the terms set forth in the Buy/Sell Notice.
>
> Neil Strumingher has verbally communicated to David Niehaus
> and [Deborah] Mathias that Kaliae no longer desires to buy
> out MNK under the terms set forth in the Buy/Sell Notice.
>
> Kaliae and MNK hereby waive their respective rights, if
> any, under the TIC Agreement, with respect to the Buy/Sell
> Notice, and the Buy/Sell Notice is considered by both
> parties to be null and void and of no legal effect
> whatsoever.
>
> Kaliae and MNK hereby confirm that effective immediately
> they remain 50/50 Tenants in Common in the Property,
> subject to all the terms in the Agreement, and with no
> Buy/Sell Notice pending or effective.

(Emphasis added.) Deborah and David did not sign the "Acknowledgment and Agreement" in the September 11, 2014 Letter, triggering Kaliae LLC's obligation to purchase MNK LLC's interest in the Property.

However, Kaliae LLC did not commence the process of buying out the other 50% interest in the Property according to the Buy-Sell Notice as it represented in the September 11, 2014 Letter.

Instead, on September 23, 2014, Kaliae LLC wrote M&N LLC another letter (**September 23, 2014 Letter**) stating it would "not be electing to purchase your interest in the Kaliae property under the Buy/Sell Notice" and "we will continue to be 50/50 tenants in common as described under our TIC Agreement." In the September 23, 2014 Letter, Kaliae LLC further clarified it "hereby provides written notice to MNK [LLC] that it will not

assert its rights under the Buy/Sell Notice of March 6, 2014, and said Buy/Sell Notice is hereby null and void and of no legal effect whatsoever."

About a year later, M&N LLC filed a complaint in circuit court asserting breach of contract and requesting specific performance. Over Kaliae LLC's objection, the circuit court allowed M&N LLC to add MNK LLC as an additional plaintiff and amend its complaint.

Among other things, the circuit court granted MNK LLC's motion for summary judgment, denied Kaliae LLC's two motions for summary judgment, and denied MNK LLC's motion to modify the final judgment to include interest. The circuit court ordered Kaliae LLC to deposit $1.3 million in an escrow account within 60 days of entry of the June 19, 2017 "Court's Findings of Fact, Conclusions of Law and Order" (**FOF, COL, and Order**), and ordered MNK LLC to deliver a deed conveying its interest in the Property to Kaliae LLC within five days after receiving confirmation of the deposit. The circuit court also awarded attorneys' fees to MNK LLC. Both parties appealed.

## II. DISCUSSION

On appeal, Kaliae LLC challenges the circuit court's grant of MNK LLC's motion for summary judgment, denial of Kaliae LLC's motions for summary judgment, and the award of a monetary judgment and attorneys' fees. On cross-appeal, MNK LLC

7

challenges the circuit court's denial of its Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 60 motion to modify and correct the Final Judgment to include an award of prejudgment interest.

## A.  Summary Judgment Decisions Were Correct

We address Kaliae LLC's first three points of error together as they are related.[3]  In these points, Kaliae LLC challenges the grant of MNK LLC's motion for summary judgment and the denial of Kaliae LLC's two motions for summary judgment. To support these points, Kaliae LLC relies on the Agreement being unenforceable and the Buy-Sell Notice being revoked.

In its motion for summary judgment, MNK LLC sought "a determination that a binding and enforceable agreement was made between [MNK LLC] as seller and [Kaliae LLC] as buyer for the purchase of the subject property for $1,300,000 and [MNK LLC] is therefore entitled to a judgment specifically enforcing said agreement."  The motion specifically relied on the September 11,

---

[3]  Kaliae LLC's first three points of error are:

  A. "The trial court erred in granting Plaintiff's MSJ for:
      (1) failure to apply the accepted rules of construction;
      (2) failure to follow the summary judgment standard; and
      (3) adjudication of issues outside the scope of those presented";

  B. "The trial court erred in denying Defendant's First MSJ, as there is no dispute that the TIC Agreement is unenforceable"; and

  C. "The trial court erred in denying Defendant's Second MSJ, as there is no dispute that: (1) M&N has no actionable claim; and (2) the revocation was received prior to the expiration of 180 days."

(Formatting altered.)

2014 Letter and Kaliae LLC's representation that, "[i]f you do not execute and deliver . . . the acknowledgment and agreement set forth below by September 15, 2014, I will commence the process of buying you out under the terms of the Buy/Sell Notice."

The motion included David's declaration which incorporated by reference his declaration and the exhibits attached to M&N LLC and MNK LLC's November 9, 2016 memorandum in opposition to Kaliae LLC's motion for summary judgment. Exhibit 6 to the memorandum in opposition was the September 11, 2014 Letter and Exhibit 7 was the September 23, 2014 Letter (collectively, **September Letters**).

The September Letters clarified the parties intended MNK LLC to be bound by the Agreement. The September 11, 2014 Letter also bound Kaliae LLC to purchase MNK LLC's 50% interest in the Property if MNK LLC did not agree to render the Buy-Sell Notice null. And the September 23, 2014 Letter indicated Kaliae LLC was not going to purchase MNK LLC's interest in the Property.

Because both parties acknowledged the Agreement naming M&N LLC instead of MNK LLC was a mutual mistake of fact, the court is permitted to look beyond the Agreement. See generally, 32A C.J.S. Evidence § 1469 (2024) (noting parol evidence is admissible where there is a mutual mistake of fact).

9

With the September Letters, MNK LLC met its burden of showing there was no genuine issue as to whether an agreement existed noting Kaliae LLC intended to purchase MNK LLC's interest in the Property and that Kaliae LLC later refused to do so. See generally, Thomas v. Kidani, 126 Hawaiʻi 125, 130, 267 P.3d 1230, 1235 (2011) (noting a movant for summary judgment bears the initial burden establishing it is entitled to judgment as a matter of law).

The burden then shifted to Kaliae LLC to set forth specific facts showing there were genuine issues to be tried. See generally, K.M. Young & Assocs., Inc. v. Cieslik, 4 Haw. App. 657, 664, 675 P.2d 793, 799 (1983) (explaining in a case where plaintiffs moved for summary judgment, once a movant for summary judgment meets their burden, the non-movant "must respond by affidavit or otherwise setting forth specific facts showing a genuine issue of material fact and may not rely on allegations of the pleadings"). Kaliae LLC relied on the Agreement (which it drafted) naming M&N LLC, not MNK LLC, as the party owning 50% interest in the Property to assert only M&N LLC could have accepted the "offer" in the Buy-Sell Notice. Kaliae LLC also relied on the September Letters (which it also drafted) to show it revoked the Buy-Sell Notice.

But, contrary to Kaliae LLC's arguments (and as discussed above), these documents indicate Kaliae LLC intended

10

MNK LLC be a party to the Agreement and Kaliae LLC breached its representation in the September 11, 2014 Letter that it would purchase MNK LLC's interest in the Property if MNK LLC failed to sign and submit the included acknowledgement.

As MNK LLC did not respond to the Acknowledgment and Agreement set forth in the September 11, 2014 Letter by the September 15, 2014 deadline, the provision in the September 11, 2014 Letter requiring Kaliae LLC to purchase MNK LLC's interest in the Property was triggered and became binding.  Thus, Kaliae LLC's attempt in the September 23, 2014 Letter to disavow the September 11, 2014 provision to purchase MNK LLC's interest in the Property was invalid.

Kaliae LLC thus failed to meet its burden of showing specific facts to be tried so as to survive MNK LLC's motion for summary judgment or that it was entitled to a judgment as a matter of law on its motions for summary judgment.  See generally, K.M. Young & Assocs., Inc., 4 Haw. App. at 664, 675 P.2d at 799; Thomas, 126 Hawaiʻi at 130, 267 P.3d at 1235.

In sum, the circuit court did not err in granting MNK LLC's motion for summary judgment and in denying Kaliae LLC's motions for summary judgment.

**B.      Money Judgment And Attorneys' Fees**

In Kaliae LLC's final point of error, it contends the circuit court "erred in arbitrarily awarding a money judgment and attorneys' fees[.]"  (Formatting altered.)

**1.      Money Judgment Was Not Erroneous**

Kaliae LLC argues the circuit court's "imposition of a $1.3 million money judgment in addition to, or in lieu of, a decree of specific performance is legally incognizable," relying on HRCP Rule 70.[4]  (Emphasis omitted.)

When the circuit court entered its June 1, 2018 Final Judgment, the time to comply with the June 19, 2017 FOF, COL, and Order had passed,[5] and the edict restating the June 19, 2017

---

[4]  HRCP Rule 70 provides:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court <u>may</u> direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.  On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment.  The court <u>may</u> also in proper cases adjudge the party in contempt.  If real or personal property is within the State, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law.  When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk.

(Emphases added.)

[5]  The circuit court stayed the order until September 6, 2017, and subsequently denied Kaliae LLC's motion to stay.

FOF, COL, and Order was for final judgment purposes.  The Final Judgment was not another opportunity for Kaliae LLC to comply with the June 19, 2017 FOF, COL, and Order directing specific performance.

Instead, the circuit court explained Kaliae LLC failed to comply with the order directing specific performance, and "has not come to court indicating why [it] failed to comply other than [it] can't come up with the money -- but [Kaliae LLC] hasn't produced anything to me to show well, [it] tried to get a loan.  [It] tried to do this.  [It] tried to do that."  The circuit court continued, "[s]o the only thing I see at this time is to enter a judgment for the $1.3 million because the defendant has failed to comply with the specific performance [order] . . . and so the amount has to be made as a $1.3 million money judgment."  "The judgment is the enforcement of the Court's prior order."

There is nothing in HRCP Rule 70 prohibiting the circuit court from fashioning such a remedy in light of Kaliae LLC's failure to comply with the order directing specific performance.  See generally, HRCP Rule 70; Ash Park, LLC v. Alexander & Bishop, Ltd., 783 N.W.2d 294, 313 (Wis. 2010) (explaining "a judicial sale and deficiency judgment may be means of effectuating an award of specific performance"); 71 Am. Jur. 2d Specific Performance § 230 (2024) (noting "it is not

erroneous as a matter of law to award both damages and specific performance").

### 2. Attorneys' Fees Award Was Improper

Kaliae LLC argues the circuit court's "award of $14,520.74 in attorneys' fees was also arbitrary."

After denying MNK LLC's initial request for attorneys' fees, the circuit court stated during the May 11, 2018 hearing, "I am going to revisit the request for attorney's fees as well; however, they're going to be limited to everything that's occurred post entry of the order for summary judgment." The circuit court then required MNK LLC to submit a declaration for attorneys' fees post-summary judgment based on MNK LLC's "efforts to see enforcement of the Court's order and I do believe that, that is appropriate because, otherwise, the defendant could simply keep filing motion after motion after motion and there's no consequence to everything."

MNK LLC provided a request for $13,960.00 in attorneys' fees for work done from June 19, 2017, the date its motion for summary judgment was granted, which the circuit court awarded with general excise tax. As part of the Final Judgment, the circuit court included a handwritten order awarding the attorneys' fees:

> Based upon the Declaration of Richard L. Rost, Esq. submitted & filed June 1, 2018 and the Order Granting Plaintiff fees & HI GET an additional Judgment of $14,520.74 for attorney fees ($13960.00) and HI GET

14

> ($560.74) is entered in favor of Plaintiff and against
> defendant.  The Court notes that this handwritten paragraph
> has not been approved as to form and is entered by the
> Court sua sponte to allow an appeal from a final Judgment.

The circuit court did not indicate the legal basis for awarding attorneys' fees.

In its answering brief to this court, MNK LLC suggests the award of attorneys' fees was valid under the circuit court's inherent powers in Hawaiʻi Revised Statutes (**HRS**) § 603-21.9(6) (2016).  But the circuit court did not make any "findings tantamount to a specific finding of bad faith[.]"  Sandomire v. Brown, 144 Hawaiʻi 314, 331, 439 P.3d 266, 283 (App. 2019) (citation and internal quotation marks omitted).

As the circuit court did not provide a legal basis for its award of attorneys' fees and made no finding of bad faith, its award of attorneys' fees was an abuse of its discretion. See generally, Kaanapali Hillside Homeowners' Ass'n ex rel. Bd. of Dirs. v. Doran, 112 Hawaiʻi 356, 363-64, 145 P.3d at 899, 906-07 (App. 2006) ("Under the 'American Rule,' which we follow, each party is responsible for paying [their] own attorney's fees unless the award of attorney's fees is authorized by statute, rule of court, agreement, stipulation, or precedent.").

## C.   Denial Of HRCP Rule 60 Motion Was Not An Abuse Of Discretion

Finally, MNK LLC argues the circuit court abused its discretion by failing to correct or modify the final judgment,

relying on HRCP Rule 60 and <u>Lucas v. Liggett & Myers Tobacco Co.</u>, 51 Haw. 346, 351, 461 P.2d 140, 144 (1969).

MNK LLC relies on <u>Lucas</u> for the proposition that "[t]here is no sound reason why a plaintiff should not be able to recover a loss in earnings of an asset which defendant converted." 51 Haw. at 348, 461 P.2d at 143. The statute analyzed in <u>Lucas</u> mandated interest be ordered stating, "[i]nterest at the rate of six per cent a year, and no more, <u>shall</u> be allowed in any judgment recovered before any court in the State, in any civil suit." <u>Id.</u> at 350 n.4, 461 P.2d at 144 n.4 (emphasis added) (quoting HRS § 478-2 (1968)).

Unlike the statute analyzed in <u>Lucas</u>, HRS § 636-16 (2016) is discretionary, vesting the trial court with the discretion to award prejudgment interest in instances where it is appropriate. <u>See</u> <u>Amfac, Inc. v. Waikiki Beachcomber Inv. Co.</u>, 74 Haw. 85, 136, 839 P.2d 10, 36 (1992). Thus, MNK LLC's reliance on <u>Lucas</u> for awarding discretionary prejudgment interest is misplaced.

As to HRCP Rule 60(a), the circuit court may correct "clerical mistakes" but amending a judgment to include a discretionary $109,687.58 in prejudgment interest is not correcting a mere clerical mistake. <u>See generally</u>, 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, <u>Fed. Prac. & Proc.</u> § 2854 (3d ed. 2012) ("The judgment may be corrected by

16

including interest if this is a matter of right but not if allowing interest is discretionary.") (footnote omitted).

As to HRCP Rule 60(b)(1), "the court may relieve a party or a party's legal representative from a final judgment . . . for . . . mistake, inadvertence, surprise, or excusable neglect[.]"

In the June 1, 2018 Final Judgment, the circuit court stated it "will entertain [MNK LLC's] motion for an award of prejudgment interest under HRS § 636-16." Fourteen days later, on June 15, 2018, MNK LLC filed a "renewed" motion for prejudgment interest. Following a hearing on the motion, the circuit court denied MNK LLC's request as untimely because a request should have been filed within ten days of the judgment.

MNK LLC then moved to correct and modify the Final Judgment by including $109,687.58 interest pursuant to HRCP Rule 60. MNK LLC blamed the circuit court for failing to include prejudgment interest in the Final Judgment[6] and asserted counsel's failure to include prejudgment interest was excusable neglect.

---

[6] We pause to note that MNK LLC drafted the Final Judgment for submission to the circuit court, and the Final Judgment stated the circuit court "will entertain [MNK LLC's] motion for an award of prejudgment interest under HRS § 636-16." As MNK LLC's October 27, 2017 motion for interest was denied, it was incumbent upon MNK LLC to move for prejudgment interest following the Final Judgment within the time set forth in HRCP Rule 59(e).

17

In his declaration appended to MNK LLC's motion to correct and modify the final judgment, MNK LLC's counsel stated, "I had prepared those documents but at the time they were submitted to the Court there were disputes regarding the form of both the order and the final judgment and I did not know what form of order and Final Judgment would ultimately be entered." Counsel then admitted, "[i]n retrospect I realize now I should have calculated the actual amount of interest awarded and placed it in the order and Final Judgment."

The circuit court denied MNK LLC's motion to correct and modify the Final Judgment.

HRCP Rule 59(e) provides "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after the entry of the judgment."  And the declaration of MNK LLC's counsel did not explain why he neglected to file the motion to amend the Final Judgment to include prejudgment interest within the ten-day period set forth in HRCP Rule 59(e) to justify excusing the untimely filing.

Because awarding prejudgment interest under HRS § 636-16 is discretionary and there was no explanation why counsel failed to comply with deadline imposed by HRCP Rule 59(e), we cannot say the circuit court abused its discretion in denying

18

MNK LLC's motion to correct or modify the judgment under HRCP Rules 60(a) and (b)(1).

### III. Conclusion

Based on the foregoing, we affirm the Order Denying Modification and we vacate the Final Judgment to the extent it ordered attorneys' fees.  We remand this case for further proceedings consistent with this decision.

DATED:  Honolulu, Hawaiʻi, June 20, 2024.

On the briefs:

Peter N. Martin,
for Defendant/
Counterclaimant/Third-Party
Plaintiff-Appellant/Cross-
Appellee Kaliae LLC.

Richard L. Rost,
Richard B. Rost,
for Plaintiff/Counterclaim
Defendant/Third-Party
Defendant-Appellee/Cross-
Appellant Mathias & Niehaus
Kaliae, LLC.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge